UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 24-cr-00055-LLA |
| | ) |
| DEAN HARSHMAN, | ) |
| | ) |
| Defendant | ) |

**DEFENDANT DEAN HARSHMAN'S SENTENCING STATEMENT**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

I. <u>Introduction</u>

Comes now Defendant Dean Harshman by and through his undersigned counsel of record, William L. Shipley Esq., and submits to this Court his Sentencing Statement in advance of the Sentencing Hearing on January 16, 2025.

Mr. Harshman for sentencing before this Court having pled guilty to Count Three of the Complaint, charging him with a misdemeanor violation of, 18 U.S.C. Sec. 1752(a)(2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds.

Mr. Harshman faces a statutory maximum penalty of up to 12 months imprisonment and a fine up to $100,000.

II. <u>Sentencing Guidelines Calculation</u>

The Plea Agreement between the parties includes an agreed-upon guideline calculation for the offense of conviction.

The Presentence Report accurately sets forth that calculation, as well as recommending an additional -2 level reduction pursuant to the "Zero Point Offender" provision in U.S.S.G. Sec. 4C1.1.

| | |
|---|---:|
| **Base Offense Level:** | **10** |
| Specific Offense Characteristics: | 0 |
| Victim Related Adjustment: | 0 |
| Adjustment for Role in the Offense: | 0 |
| Adjustment for Obstruction of Justice: | 0 |
| Adjusted Offense Level **(Subtotal):** | **10** |
| U.S.S.G. Sec. 4C1.1 | -2 |
| Acceptance of Responsibility: | -2 |
| **Total Offense Level:** | **6** |

Based on an offense level of 6, and a criminal history score of 1, the Recommended Guideline Range is 0 -- 6 months.

III.    The Offense Conduct.

The parties entered into an agreed upon "Statement of Offense" as part of the plea agreement. The Probation Officer has accurately set forth the relevant facts in the Presentence Report.

IV.    Sentencing Factors Under Sec. 3553(a)

Pursuant to 18 U.S.C. § 3553(a), several factors are to be considered by the Court in formulating an appropriate sentence in this case.

The facts of this case, including the facts of the offense and factual circumstances pertinent to the Defendant's background and personal characteristics, should inform this Court with respect to the following issues to be considered pursuant to Sec. 3553(a):

> 1.  Nature and circumstances of the offense and the history and personal characteristics of the defendant.
>
> a.  The Nature and Circumstances of the Offense.

For the most part, the events of the day on January 6 are not in dispute and need not be recounted here. As Judges in this District have recognized after studying the events of January 6 in great detail, the crowd at the Capitol that day can be generally categorized as having three primary constituent parts:

1) A relatively small group of individuals who came to the Capitol for the purpose and with the intent to engage in violence with the goal of disrupting the Congress's certification of the 2020 Electoral Vote.

2) A larger number of protesters who intended to protest in a loud and raucous manner as a manifestation of their unhappiness and distrust with regard to the outcome of the election -- but with no predetermined intention of engaging in violence – some of whom were drawn into committing acts of violence once there; and

3) an even larger group who remained as spectators to what developed into a riot by members of the first two groups. Some members of this third group entered the Capitol building, walked around, and then exited without incident. Mr. Harshman is squarely within this third group.

Mr. Harshman traveled to Washington, D.C., to exercise his First Amendment right of assembly as part of the "Stop the Steal" rally at the Ellipse. Mr. Harshman was concerned about the certification of the 2020 Presidential Election. Mr. Harshman's primary purpose in attending was to peacefully express his views on the election process and support then-President Donald Trump.

Throughout the day's events, Mr. Harshman can be seen on video wearing a light gray Cabela's sweatshirt with dark gray sleeves, a green backpack, and blue jeans. Following the rally, he joined the crowd in walking toward the U.S. Capitol. Upon arriving near the Capitol grounds, he observed the scene and began filming on his cell phone, documenting what he described as "D.C. police officers standing guard in front of our House."

At approximately 12:54 p.m., individuals in the crowd breached the barriers near the Peace Circle area on the Capitol's northwest front. Mr. Harshman followed the flow of the crowd that entered the Capitol grounds. He continued filming, capturing the chaotic atmosphere and narrating the events as they unfolded. His statements, such as "This is the stuff they ain't gonna show you on TV!" and "We're taking our House back!" reflect his attempt to record for others to see what he perceived as a historic moment.

At one point, while filming an "Area Closed" sign on the ground, he remarked, "Area is NOT closed!" His commentary, while spirited, was consistent with the charged emotions of the crowd and reflected his personal interpretation of the situation rather than an intent to disobey or disrespect authority.

As Mr. Harshman made his way to the West Plaza, he stood near law enforcement officers, observing and documenting the scene. He conversed with others about the heavy police presence and filmed interactions between officers and the crowd, including the deployment of crowd control munitions such as "pepper balls" directed at the crowd by the police.

Eventually, Mr. Harshman moved with the crowd up the stairs to the Upper West Terrace.  At approximately 2:20 p.m., he entered the Capitol building through the Senate Wing Door, which had been opened by others approximately 7 minutes earlier and through which hundreds of other protesters entered ahead of him.  He briefly walked through parts of the building, including the Crypt and a nearby office, continuing to film the interior and record his observations.

At around 2:35 p.m., Mr. Harshman returned to the Senate Wing Doors and exited via a window that had been broken out earlier – approximately 15 minutes after he had first entered. His departure marked the end of his brief time inside the building.

Mr. Harshman's actions on January 6, 2021, were largely observational and reflective of his intention to document what he viewed as an important moment in history. While he followed the crowd and expressed his sentiments vocally, he engaged in no violence nor did he actively engage in any hostile actions directed at any officer or other official inside the Capitol. His involvement was within the broader context of a chaotic and highly emotional fast-moving situation where each individuals' actions were often influenced by the behavior and movements of those around them.

At various points in time Mr. Harshman was faced with decisions – stay in the crowd outside in the park area to the west of the building or follow the crowd up to the upper level; remain outside the building on the upper level or follow the crowd moving towards the Senate Wing Doors; enter through the Senate Wing Doors or turn away and retreat from the scene; etc. Mr. Harshman made wrong choices at various points in time and those choices led him to the interior of the Capitol building, passing through the doors which an objective observer would not have assumed was an authorized method of entering a building normally as secure as the United States Capitol.

For that reason, Mr. Harshman has pled guilty to the offense for which he now stands before the Court to be sentenced.

      b.  <u>History and Personal Characteristics</u>.

Mr. Harshman was born on July 11, 1987, in Kettering, Ohio, to Guy and Linda Harshman and is one of four children. His father, now retired, worked as a maintenance manager at a heat-treating plant, while his mother dedicated her time to raising their family. Mr. Harshman described a wholesome, supportive upbringing in a Christian household, where family values were strongly emphasized. He recalled engaging in activities such as football, drag racing, camping, and fishing in his youth.

Mr. Harshman is a combat veteran having completed two combat tours in Iraq. During his service, Mr. Harshman was awarded the Combat Action Ribbon, Good Conduct Medal, a Certification of Commendation, and the Navy and Marine Corps Achievement Medal. Since completing his service, Mr. Harshman has continued to donate his time to the United States Marine Corps by orchestrating the first, and now biennial Marine Reunion for the 2nd and 3rd Marines Golf Company.

In 2011, Mr. Harshman married his current wife, Jessica Harshman, a contract nurse who works at a geriatric/veteran's hospital. Together, they have built a loving family with three children: Silas (age 7), Jack (age 6), and Hailey (age 3). Despite experiencing the devastating loss of their firstborn child in 2015 due to complex medical conditions, the Harshmans have shown remarkable resilience. Mr. Harshman attributes their strength to mutual support and shared faith, though he believes exposure to chemicals during his military service may have contributed to their child's health challenges. Mr. Harshman and his family reside on a farm in Waynesville, Ohio, which he has owned for the past four years. The farm is home to over 100 chickens and

other animals, showcasing his dedication to self-sufficiency and hard work. The defendant also operates a small business, Harshman Precision Gunsmithing, under a Federal Firearm License (FFL). At no point during the pendency of this action has Pretrial Services noted or reported any issue with regard to Mr. Harshman's business operations involving his gunsmthing business as he is careful to strictly comply with all laws that apply thereto.

Mr. Harshman's wife described him as her best friend and a devoted father, emphasizing his positive influence on their family. Despite the current legal proceedings, their relationship remains strong, and he is viewed as an irreplaceable pillar in their household. Should a custodial sentence be imposed, it would place significant financial and emotional burdens on his family, potentially requiring additional community support to manage childcare and farming operations.

Mr. Harshman is described by his community as charismatic, outgoing, and deeply family-oriented, voicing concerns about the potential impact of incarceration on his young children. Throughout his life, Mr. Harshman has demonstrated responsibility and integrity, as evidenced by his successful transition from military service to entrepreneurship and farming.

> 2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other <u>correctional treatment in the most effective manner</u>.

This Court, as a matter of justice and equity, should treat Mr. Harshman no different than other misdemeanant offenders convicted for their involvement in the events at the Capitol on January 6.

Mr. Harshman's involvement was limited to entering the building without authority at a location and under objective circumstances that should have caused him to exercise better judgment.

Mr. Harshman engaged in no acts of violence. He did not engage with any law enforcement officers, and he did not engage in any destruction of property.

Given Mr. Harshman's actual conduct on January 6, the sentence of probation to address the nature of the criminal acts which he has admitted. Custodial time in any amount is unnecessarily punitive, particularly given that he has never before had any contact or involvement in the criminal justice system. He is precisely the type of offender recognized by the Sentencing Commission in the creation of an additional Chapter Four reduction as a "Zero Point Offender" for whom a custodial sentence should be the exception and not the norm. There are no factual circumstances that warrant Mr. Harshman being treated as an exception in this instance.

After a review of sentencings, it only appears this Court has issued one sentence that is most in line with this case. In *United States v. Kovsky*, 24-cr-00065, the Government asked for a custodial sentence of 30 days but this Court found a sentence of probation justified based on Defendant Kovsky's actions. The facts in *Kovsky* are very similar to Mr. Harshman's. Neither of

them committed any acts of violence nor engaged with any officers. Both entered the Capitol Building for a short amount of time and caused no damage.

This Court should also consider similar sentences by other Judges of this Court which have acknowledged that such sentences are appropriate in substantially similar cases where the defendant is a first-time violator and there are no aggravating factors in the defendant's conduct on January 6. *United States v. Wiesmar,* 21-cr-00592-1-ABJ, *United States v. Frankowski,* 21-cr-00592-2-ABJ, *United States v. Cronin,* 22-cr- 00233-ABJ. In each of those cases, the Government asked for a term of incarceration, but the Court determined that such a sentence was not warranted by the facts and that a sentence of probation was sufficient to accomplish the Sec. 3553(a) policy goals.

The Defendants in *Wiesmar* and *Frankowski* are similar to Mr. Harshman, but each acted in ways that were more disruptive than Mr. Harshman inside the Capitol. They entered the Capitol building following the crowd just as Mr. Harshman, but then traveled to different locations while inside the building and spent more time inside. *Wiesemar* and *Frankowski* entered Senate offices and spent several minutes inside. Similar to Mr. Harshman, they caused no damage to the building nor engaged in any violence.

*Cronin* is also similarly situated to Mr. Harshman. He entered the building, met up with his codefendants and the group made its way towards the Senate. After being in the building for a short time, Cronin exited the building on the same route he entered. After entering Cronin spent some time

traveling through the halls before exiting the building causing no damage nor engaging in violence.

Further, this Court should also recognize the sentence handed down by District Judge Mehta in *United States v. Greene*, 21-cr-00028-AMP. Defendant Greene went to trial, was acquitted of four felonies, but was found guilty by a jury on a Class "A" misdemeanor – he did not plead guilty and maintained his innocence even at sentencing. Nevertheless, Judge Mehta found it proper to sentence Greene to only two years of probation based on the totality of the evidence heard at trial.

## DEFENDANT'S SENTENCING RECOMMENDATION

Based on specific offense conduct here, and taking into consideration all the factors set forth by Congress in Section 3553(a), a sentence of one year of probation for Defendant Dean Harshman's accomplishes the purposes of Section 3553(a) and is a sentence that adequately addresses the seriousness of the offense involved, and promotes future respect for and adherence to the law not only by them but by the public at large as well.

Dated: January 2, 2025      Respectfully submitted,

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com